FILED

~~SEALED~~

UNITED STATES DISTRICT COURT 2017 JUL 19 PM 12: 43
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

DANIEL CARDENAS and
ABDELGHANI MELLOUKI

CASE NO. 8:17-cr-360-T-35AEP

18 U.S.C. § 1349
18 U.S.C. § 1343

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy - 18 U.S.C. § 1349)

### A. Introduction

At times material to this Indictment:

1.     The Federal Deposit Insurance Corporation ("FDIC") was an agency of the United States of America, established to protect depositors against substantial loss with the purpose of preventing bank collapses and instilling public confidence in the nation's banks.

2.     LaSalle Bank Midwest ("LaSalle Bank") was a financial institution, with offices located throughout the United States, the deposits and accounts of which were insured by the FDIC. ABN AMRO Mortgage Group was a subsidiary of LaSalle Bank.



~~SEALED~~

3.     It was the practice of many lending institutions, including the above-named financial institutions, to make loans secured by real property to borrowers.  Such loans were often simply called mortgages or mortgage loans.  In determining whether or not to extend any such loan, it was also the practice of the lending institutions to rely upon the information contained in a borrower's mortgage-related documents, such as the Uniform Residential Loan Application, the United States Department of Housing and Urban Development Settlement Statement, and the mortgage itself.

4.     A Uniform Residential Loan Application (or a "Fannie Mae Form 1003"), commonly referred to as a mortgage loan application, was generally utilized by lending institutions and other lenders in the mortgage loan approval process.  The Fannie Mae Form 1003 was designed to be completed by the applicant borrower(s) with the lender's assistance and required the borrower to truthfully provide to the lender various types of material information, including employment information, monthly income, detailed financial information (including asset and liability information), and other specifics of the residential property transaction, such as the purchase price and whether the borrower would use the property as a primary residence, secondary residence, or an investment.

5.    Near the end of the Fannie Mae Form 1003, in the

Acknowledgment and Agreement section, the form included, in pertinent

parts, the following or similar language:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that:
>
> a.    the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.;
>
> b.    the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application;
>
> c.    all statements made in this application are made for the purpose of obtaining a residential mortgage loan;
>
> d.    the property will be occupied as indicated in this application; and
>
> e.    the Lender and its agents, brokers, insurers, services, successors and assigns may continuously rely on the information

contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan.

6.     To complete and submit the Fannie Mae Form 1003 to secure a mortgage loan, the prospective borrower(s) was required to sign and date the Acknowledgment and Agreement section of the form.

7.     A United States Department of Housing and Urban Development Settlement Statement (or a "HUD-1 Settlement Statement") was a form generally used in closings of the sales of residential properties in the United States.   A HUD-1 Settlement Statement was used to identify and allocate the various receipts, disbursements, expenses, and payments associated with the sale of residential real estate between the buyer and the seller of the property. Each HUD-1 Settlement Statement included the following or similar warning at the bottom of the form:

It is a crime to knowingly make false statements to the United States on this or any similar form.

8.     The HUD-1 Settlement Statement also frequently included the following or similar statement and certification by the prospective borrower and seller:

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and

4

accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

9. The Settlement Agent responsible for handling the closing of the sale of residential property was also required to sign the HUD-1 Settlement Statement attesting to the following or similar statement:

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

10. Co-conspirator 1, through his companies – Limited Liability Company 1, Limited Liability Company 2 and Holding Company 1, (collectively referred to herein as "co-conspirator 1's companies") – purchased The Preserves at Temple Terrace ("The Preserves"), a 392-unit apartment complex located at 7735 Fletcher Avenue in Tampa, Florida in 2005. Co-conspirator 1 purchased The Preserves for the purpose of converting it from a rental apartment complex into a condominium.

11. Transcontinental Lending Group, Inc. ("TLG") was a Florida corporation incorporated on or about March 4, 1996. TLG originated mortgage loans pertinent to this indictment that were funded by financial institutions, or subsidiaries of financial institutions. Co-conspirator Alejandro Tobon was a branch manager of a TLG branch in Tampa, Florida.

5

12.     Defendant DANIEL CARDENAS lived for a time in Hillsborough County, Florida, and worked as a mortgage broker at TLG.

13.     Tobon Marketing and Consultant, Inc. ("Tobon Marketing") was a Florida corporation incorporated on or about June 12, 2006.   Co-conspirator Alejandro Tobon was the incorporator, officer and registered agent of Tobon Marketing.

14.     Title Company 1 conducted real estate closings pertinent to this indictment.

15.     Defendant ABDELGHANI MELLOUKI, lived for a time in Hillsborough County, Florida and purchased condominium units at The Preserves.

**B.   The Conspiracy**

16.     Beginning on an unknown date, but no later than in or about October 2007, and continuing through in or about May 2008, in Hillsborough County, in the Middle District of Florida, and elsewhere, the defendants,

DANIEL CARDENAS
and
ABDELGHANI MELLOUKI,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to commit the following offense:

6

To knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, by transmitting and causing to be transmitted by means of wire communication in interstate and foreign commerce any writing, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, which affected a financial institution, in violation of Title 18, United States Code, Section 1343.

### C. Manner and Means of the Conspiracy

17.     The manner and means by which the defendant and other co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

a.     It was part of the conspiracy that co-conspirator Alejandro Tobon, along with others known and unknown to the Grand Jury, would and did market, solicit and sell condominium units at The Preserves in Tampa, Florida to buyers as investment properties.

b.     It was a further part of the conspiracy that co-conspirator Alejandro Tobon, in concert with other co-conspirators, would and did promise buyers that the buyers would not be required to provide any money at closing, and would receive a kickback of funds after closing.

c.     It was a further part of the conspiracy that the co-conspirators would and did promise buyers incentives, undisclosed to the

7

mortgage lenders, which included payments of the mortgage loan on the condominium units and the dues for the homeowners' association.

d. It was a further part of the conspiracy that the defendants, DANIEL CARDENAS and ABDELGHANI MELLOUKI, in concert with co-conspirator Alejandro Tobon, and others, caused documents that contained materially false and fraudulent statements and omissions to be prepared and submitted to ABN AMRO Mortgage Group, and other mortgage lenders, which resulted in the interstate wire transfer of loan proceeds from the financial institutions, to the buyer for the purchase of the condominium units.

e. It was a further part of the conspiracy that co-conspirator 1 would and did transfer monies from accounts under his control to Tobon Marketing's bank accounts controlled by co-conspirator Alejandro Tobon for the purpose of funding the buyer's cash to close at settlement.

f. It was a further part of the conspiracy that co-conspirator Alejandro Tobon, in concert with others, would and did use Tobon Marketing and other entities to fund the buyer's cash to close, funnel cash kickbacks as well as other incentives to buyers of condominium units. These kickbacks and incentives were not disclosed on the HUD-1 settlement statements submitted to the mortgage lenders.

g.    It was a further part of the conspiracy that the defendants, DANIEL CARDENAS and ABDELGHANI MELLOUKI, in concert with co-conspirator Alejandro Tobon, and others, would and did distribute and/or share funds acquired during the conspiracy, often using bank accounts they controlled.

h.    It was a further part of the conspiracy that the defendants, DANIEL CARDENAS and ABDELGHANI MELLOUKI, in concert with co-conspirator Alejandro Tobon, and others, would and did perform acts and make statements to hide, misrepresent, and conceal, and cause to be hidden, misrepresented, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO AND THREE
### (Wire Fraud Affecting a Financial Institution - 18 U.S.C. § 1343)

### A.    Introduction

1.    The Grand Jury re-alleges paragraphs 1 through 14 in Section A of Count One of this Indictment as though fully set forth herein.

### B.    The Scheme

2.    Beginning on an unknown date, but no later than in or about October 2007, and continuing through in or about May 2008, within the Middle District of Florida and elsewhere, the defendants,

DANIEL CARDENAS
and
ABDELGHANI MELLOUKI,

along with their co-conspirators, including Alejandro Tobon, did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C.   Manner and Means of Scheme

3.   The substance of the scheme and artifice and its manner and means are described in paragraphs 16a. through 16h. contained in Section C of Count One of this Indictment, and the Grand Jury re-alleges those allegations as though fully set forth herein.

## D.   Executions of the Scheme

4.   On or about the date set forth below, within the Middle District of Florida and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendants,

DANIEL CARDENAS
and
ABDELGHANI MELLOUKI,

10

did knowingly cause to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds that is wired loan proceeds to fund property purchases, all of which affected the listed financial institution:

| COUNT | DATE | Relevant Property | FROM | TO | FINANCIAL INSTITUTION |
|---|---|---|---|---|---|
| **Two** | 1-18-2008 | 13055 Sanctuary Cove Drive, Unit #1412 | Michigan | Hillsborough County, Florida | LaSalle Bank Midwest |
| **Three** | 1-18-2008 | 13055 Sanctuary Cove Drive, Unit #1414 | Michigan | Hillsborough County, Florida | LaSalle Bank Midwest |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURES

1.    The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(2).

2.    From their engagement in the violations alleged in Counts One through Three of this Indictment, punishable by imprisonment for more than one year, the defendants,

11

DANIEL CARDENAS
and
ABDELGHANI MELLOUKI,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

3.     If any of the property described above, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

12

the United States of America shall be entitled to forfeiture of substitute

property under the provisions of Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

Foreperson

W. STEPHEN MULDROW
Acting United States Attorney

By: 

Christopher Poor
Special Assistant United States Attorney

By: 

Jay L. Hoffer
Assistant United States Attorney

By: 

Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

13

FORM OBD-34
July 17

No.

UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

DANIEL CARDENAS and
ABDELGHANI MELLOUKI

SEALED

INDICTMENT

Violations: 18 U.S.C. §§ 1349 and 1343

A true bill,

_____
Foreperson

Filed in open court this <u>20th</u> day

of July, 2017.

_____
Clerk

Bail $_____

GPO 863 525